[Cite as *In re K.Y.*, 2016-Ohio-604.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**CLARK COUNTY**

| | |
|---|---|
| IN THE MATTER OF: | : |
| | :    Appellate Case No. 2015-CA-56 |
| K.Y. and B.Y. | : |
| | :    Trial Court Case Nos. 2013-1124 |
| | :                        2013-1126 |
| | : |
| | :    (Juvenile Appeal from |
| | :     Common Pleas Court) |
| | : |
| | : |

. . . . . . . . . .

O P I N I O N

Rendered on the 19th day of February, 2016.

. . . . . . . . . .

RYAN A. SAUNDERS, Atty. Reg. No. 0091678, Clark County Prosecutor's Office, 50 East Columbia Street, 4th Floor, Springfield, Ohio 45502
      Attorney for Appellee, Clark County Family & Children Services

JENNIFER S. GETTY, Atty. Reg. No. 0074317, The Law Office of Jennifer S. Getty, LLC, 7501 Paragon Road, Dayton, Ohio 45459
      Attorney for Appellant, A.S., Mother

. . . . . . . . . . . .

FAIN, J.

{¶ 1} A.S., the biological mother of B.Y. and K.Y., appeals from a judgment granting permanent custody of the children to Clark County Department of Job and Family

Services (CCDJFS). A.S. contends that the juvenile court abused its discretion in denying her request to award legal custody to a relative, and by terminating her parental rights.

{¶ 2} We conclude that the evidence in the record supports the findings and decision of the court. Accordingly, the judgment of the juvenile court is Affirmed.

## I. Factual Background

{¶ 3} B.Y., who was born in 2001, and K.Y., who was born in 2004, are the children of A.S. and C.Y.[1] CCDJFS has been involved with this family numerous times since early 2009. In 2011, the agency received reports regarding allegations of sexual abuse against one of the children, committed by A.S.'s live-in boyfriend "Robert Smith."[2] A.S. dated Smith for a few months before he moved in with her and the children. A.S. was aware that Smith was a registered sex offender in Florida. CCDJFS was granted protective supervision over the children. Part of A.S.'s case plan required her to prevent Smith from being around the children. The case was closed in April 2013, when A.S. assured the agency that Smith was no longer living with her, and that they had broken up.

{¶ 4} In September 2013, B.Y. was at the home of another woman, when she informed that woman that Smith had sexually abused her. Police were called to that home. At some point, A.S., and another daughter, A.Y., arrived on the scene. An

---

[1] C.Y. is not a party to this appeal.

[2] To protect the privacy of the children, we will refer to this individual by the pseudonym "Robert Smith" or "Smith" throughout this opinion.

altercation occurred, and A.S. was arrested for assault. It was discovered that Smith was still living with A.S.[3] The children were removed from the home, and were placed in the temporary custody of CCDJFS as of November 22, 2013. Case plans were developed for both A.S. and C.Y. Part of A.S.'s case plan, again, required her to remove Smith from her home. A.S. has not complied with that requirement. She has consistently stated that she does not believe that Smith assaulted B.Y. In 2014, A.S. moved for an order awarding legal custody of the children to her brother, D.S. CCDJFS moved for permanent custody in January 2015.

{¶ 5} Following a hearing, the juvenile court determined that an award of permanent custody to CCDJFS was in the best interest of the children. The court denied the motion for legal custody to D.S. A.S. appeals.

## II. The Trial Court Did Not Abuse its Discretion in Awarding the Agency Permanent Custody of the Children

{¶ 6} A.S.'s First and Second Assignments of Error state as follows:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION BY FINDING THAT PERMANENT CUSTODY TO THE CLARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES WAS IN THE BEST INTEREST OF THE CHILDREN AS SAID FINDING IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN FINDING THAT THE MOTION OF THE MOTHER FOR LEGAL CUSTODY

---

[3] A.S. and Smith married in June of 2013.

OF THE CHILDREN TO [D.S. AND M.S.] WAS NOT WELL-TAKEN.

{¶ 7} In both of these assignments of error, A.S. contends that the trial court failed to properly consider awarding legal custody of the children to her brother, D.S. and his partner, M.S. She claims that D.S. has been a constant presence in the lives of the children, and that being placed with him would permit the children to maintain familial relationships.

{¶ 8} R.C. 2151.414(B) sets forth the circumstances under which a court may grant permanent custody of a child to a children services agency. Pursuant to R.C. 2151.414(B)(1)(d), the court may grant permanent custody of a child to the agency if the court determines, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody to the agency and that the child has been in the temporary custody of one or more public children services agencies for twelve or more months of a consecutive twenty-two month period.

{¶ 9} In this case, there is no dispute that the children have been in the custody of CCDJFS for well over twelve months at the time of the hearing.[4] Therefore, we need only consider the issue of whether the evidence supports a finding that awarding custody to the agency is in the best interest of the children.

{¶ 10} Pursuant to R.C. 2151.414(D)(1), in determining the best interest of a child, the court shall consider all relevant factors, including, but not limited to, the following:

---

[4] The Juvenile Court, and subsequently the State, appear to have incorrectly utilized R.C. 2151.414(B)(1)(a) in addressing this issue. However, because the children were in the custody of CCDJFS for twelve or more months of a consecutive twenty-two month period, only R.C. 2121.414(B)(1)(d) applies. We find no prejudicial error arising therefrom, because the court did consider the best interests of the children.

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶ 11} There is evidence in the record that B.Y. is no longer bonded to her mother, and that she wants no relationship with her mother. Furthermore, it is clear that she does

not want her mother to have access to her. K.Y. appears to love her mother, but she is well-bonded with her foster family, and does not want to live with her mother. As noted, A.S. has not argued that placing the children with her would be in their best interest; she has moved for an order awarding legal custody to her brother, D.S. A.S. has refused to accept B.Y.'s allegations against Smith, and has maintained her relationship with him, having married him, after having informed the agency that their relationship had ended.

{¶ 12} The trial court conducted an in camera interview with the children at the conclusion of the hearing. B.Y., then thirteen years old, explicitly stated that she did not want to be placed with D.S. or her mother. She told the court that she believed D.S. would allow A.S. in the home, which would give A.S. access to B.Y. K.Y. appeared ambivalent about where she lived. The guardian ad litem, who has been involved in this case for more than six years, testified that an award of permanent custody to the agency would be in the best interest of the children.

{¶ 13} The children have been in the temporary custody of the agency since September 2013. Before then, there was agency involvement with the family due to claims of abuse and neglect. The children need a secure placement in order to deal with their significant mental health issues, and the evidence indicates that this cannot be achieved without a grant of permanent custody.

{¶ 14} The evidence in this case indicates that D.S. and his partner M.S. cannot provide an appropriate placement for the children. D.S. was born female, and as of the date of the hearing, had been living as a transgendered male for about two years. He was 21 years old at the time of the hearing. M.S. had been his lesbian partner for about four years. A psychological evaluation was conducted on both. The evaluation

revealed that D.S. had a history of depression, cutting and burning himself during high school, and had used pills in an attempt to overdose. While D.S. testified that those problems were no longer issues, now that he had gone through his gender transition, the psychological evaluation indicated that there was significant evidence that he exaggerated his strengths and minimized his weaknesses. It further appears that D.S. does not believe that he needs to engage in counseling, despite recommendations that he do so. The evaluation indicated that M.S. has significant problems with depression and anxiety.

{¶ 15} D.S. had been awarded legal custody of A.S.'s older daughter, A.Y. A.Y. has Asperger's Disorder, Posttraumatic Stress Disorder, and Attention Deficit Hyperactivity Disorder. The three live in a two-bedroom apartment. The evaluating psychologist opined that while D.S. and M.S. may be able to manage having custody of A.Y., they are not capable of having custody of all three children. Specifically, the psychologist stated that D.S. and M.S. would not be able to meet all of the mental health issues of the children, and maintain stability with their own mental health.

{¶ 16} There is evidence in the record that D.S. fails to recognize that A.S. continues to engage in behaviors that are upsetting and disrupting to the children. Most troubling is the fact that D.S. does not perceive Smith as a threat or a danger to the children, due to the fact that Smith is totally disabled at this time. This ignores the evidence presented that the agency has made it clear to all the parties that even being around Smith causes the children anxiety. Furthermore, the psychologist indicated that D.S.'s coping skills are fragile and limited, and would be overcome by attempting to manage the needs of all three children.

{¶ 17} This court will not reverse a juvenile court judgment regarding an award of permanent custody unless the judgment is not supported by evidence sufficient to meet the clear and convincing standard of proof. *In re Z.W.*, 2d Dist. Montgomery No. 23657, 2010-Ohio-1619, ¶ 27. "Clear and convincing evidence" is that level of proof "which would cause the trier of fact to develop a firm belief or conviction as to the facts sought to be proven." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 18} There is evidence in this record to support the juvenile court's finding that D.S. is not capable of assuming legal custody of the children. And there is evidence in the record to support a finding that an award of permanent custody is in the best interest of the children. We conclude that the court did not abuse its discretion by awarding permanent custody to CCDJFS.

{¶ 19} The First and Second Assignments of Error are overruled.

### III. The Trial Court Did Not Abuse its Discretion by Terminating the Mother's Parental Rights

{¶ 20} The Third Assignment of Error asserted by A.S. states:

THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN ORDERING THAT ALL RIGHTS AND DUTIES OF THE MOTHER OF THE CHILDREN BE TERMINATED.

{¶ 21} A.S. contends that the court erred by terminating her parental rights. She contends that she should be entitled to maintain some relationship with the children. In

support, she claims the children want to visit with her, and that visitation does not cause harm. She further claims that she has attempted to reconcile her relationship with them.

{¶ 22} We find no support in the record for these claims. B.Y. is adamant that she does not want any relationship with her mother. While K.Y. does appear to love her mother, she did not express any desire to be around her. Furthermore, it is clear that by continuing her relationship with Smith, A.S. does not place sufficient importance on her relationship with the children.

{¶ 23} We find no error in the court's decision terminating A.S.'s parental rights. Accordingly, the Third Assignment of Error is overruled.

## IV. Conclusion

{¶ 24} All of A.S.'s assignments of error having been overruled, the judgment of the trial court is Affirmed.

. . . . . . . . . . . .

HALL, J., concurs.

FROELICH, J., concurring:

{¶ 25} I write separately only to emphasize that, based on the record, the sexual orientation of D.S. and M.S. played no role in the trial court's very thorough decision. The court found that D.S.'s "coping skills are very limited and [D.S.] has no experience in dealing with children who have suffered traumatic abuse." D.S. was "not able to meet the specific and significant needs of the children and would likely be overwhelmed if the children were placed" in D.S.'s care. M.S. "like D.S., [was] not aware of the needs of the

children and was not organized in her affairs or stable in her relationship."

**{¶ 26}** Thus, I concur in our opinion that relevant evidence in the record supports the juvenile court's finding that D.S. is not capable of assuming legal custody of the children.

. . . . . . . . . . . .

Copies mailed to:

Ryan A. Saunders
Jennifer S. Getty
Lisa Niles
Richard Barnes, Jr.
Hon. Joseph N. Monnin